UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE SIGNAGE FOUNDATION,<br>FOR COMMUNICATION<br>EXCELLENCE INC.,<br><br>        Plaintiff<br><br>        vs.<br><br>AMERICAN PLANNING ASSOCIATION,<br><br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)   Cause No. 3:01-CV-649RM<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This case fell between the cracks. The parties placed a complex matter before the court for trial in September 2004 and, in light of the time apparently needed to resolve the issues, this file took back seat after back seat to matters that required more immediate attention. This does not excuse the case having lain so long under advisement. The court could have expedited ruling by making greater use of its staff, but personal judicial attention seemed preferable. Given the resultant delay, perhaps it was not preferable. In any event, ruling has taken far too long to arrive, and the delay cannot be sufficiently explained or excused. The court simply offers its embarrassed apologies to all involved with the case.

And many have been involved with the case. Each side has hired and replaced attorneys, and each set of attorneys has brought a new set of ideas as to how best to represent its client. The kaleidescopic nature of the issues and arguments continued up to the very eve of trial, breathing greater complexity into what might have been a far simpler case.

The Signage Foundation for Communication Excellence, Inc. sues the American Planning Association for breach of contract and fraud. The court's jurisdiction is based on the parties' diverse citizenship. 28 U.S.C. § 1332. The Signage Foundation originally sought an injunction against the APA's electronic publication of a planning advisory service manual called *Content-Sensitive Signage Design*. The manual grew out of a 1996 contract, amended in 1999, between the Signage Foundation and the Planning Association.

The court bifurcated the bench trial of this case. After the first half of the bifurcated trial, the court rejected the APA's affirmative defense under the Indiana anti-SLAPP statute, IND. CODE § 34-7-7.

The case's complexity was magnified when the Signage Foundation's trial attorneys moved on the eve of the second trial in this bifurcated suit to amend the complaint to add new theories. The court denied that motion, but perhaps in the hopes of persuading the court to reconsider that ruling, counsel for the Signage Foundation spent a good portion of that trial seeking to resurrect the new theories. On top of that, the Signage Foundation filed a motion to compel and for discovery sanctions on the day of trial. The court declined to continue the trial based on that motion, refused to make opposing counsel respond immediately to a motion entailing more than 100 pages, and indicated that briefing should proceed under the time table established for such things in the district rules. Nonetheless, counsel for the Signage Foundation spent a surprising amount of time at trial — surprising in the sense that both sides were working within the confines of time limits for their presentation — calling witnesses specifically to

address the motion to compel discovery and for sanctions. Finally, in a situation the trial judge had never seen before, the Signage Foundation's two trial attorneys brought differing, and competing, theories to the trial.

In any event, trial on the Signage Foundation's second amended complaint and the APA's counterclaim was conducted on September 15-17, 2004, and was adjourned when APA indicated its intention to move for judgment on partial findings at the conclusion of the Signage Foundation's case in chief, and the court broke to accommodate travel schedules. This memorandum is intended to satisfy the court's obligation under Federal Rule of Civil Procedure 52 to make findings of fact and conclusions of law, and also address the Signage Foundation's eve-of-trial motion for sanctions for discovery misconduct.

Neither motion requires discussion as lengthy as the court had prepared and expected to be needed. That discussion may be ripe soon, because the Signage Foundation has rested its case and counsel for the APA indicated near the end of the Signage Foundation's case in chief that the APA didn't intend to call witnesses. At this stage, however, thorough discussion of the facts of the case is neither necessary nor appropriate. Ruling on the motion for judgment on partial findings flows from the court's struggles to restrict the parties to the issues properly placed before the court.

The Signage Foundation brought two claims: one (count 1) for breach of contract; the other (count 2) for fraud. A federal fraud plaintiff must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was

communicated to the plaintiff." Kennedy v. Venrock Associates, 348 F.3d 584, 593 (7th Cir.2003). The Signage Foundation alleged that the APA's William Klein fraudulently induced the Signage Foundation to enter into the amendment to the original contract by misrepresenting that the APA had neither the time nor the resources to produce an Appendix C under the original contract, that Growing Smart, another APA research project, was being contemporaneously developed, and that Growing Smart did not include content that the Signage Foundation would be interested in or want to be involved with. The Signage Foundation also alleged that the APA didn't tell the Signage Foundation that Eric Kelly was writing a model sign code for Matthew Bender, fraudulently inducing the Signage Foundation to agree to relieve the APA from preparing an Appendix C under the original contract. Because Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with specificity, the Signage Foundation cannot base its fraud claim on any other representations or omissions.

The Signage Foundation presented no evidence of Mr. Klein's alleged misrepresentations, or about Eric Kelly writing a model sign code, at either phase of the bifurcated trial. Evidence from the APA might have spared the Signage Foundation its burden of production (though not its burden of proof), but the APA presented no such evidence, either. The Signage Foundation doesn't claim to have met its burden of proof concerning those allegations; it simply refers to the claims it wished to raise in its amended complaint. Those claims were not part of the trial and are not part of the case. No further findings are necessary with respect to the Signage Foundation's fraud claim. No evidence of record supports that claim, and

the APA is entitled to judgment on that claim.

The APA attempts to raise the Indiana Anti-SLAPP statute, IND. CODE § 34-7-7, as grounds for judgment on the Signage Foundation's contract claim. The APA may not do so. The APA raised the anti-SLAPP statute, an affirmative defense that compels dismissal of the suit even if the plaintiff otherwise would prevail on its complaint, as a basis for an early resolution of the case. Because the statute entitled the APA to an early resolution if it wished, the court bifurcated the trial and advanced that issue for resolution. At the conclusion of that stage of the trial, the court concluded that the APA, through its agreement with the Signage Foundation, waived whatever anti-SLAPP-recognized speech rights it had, so the statute afforded no basis for the early dismissal the APA sought.

In ¶ 47 of its answer to the Signage Foundation's complaint, the APA raised the Anti-SLAPP statute as an affirmative defense. The court granted the Signage Foundation's motion to strike that defense. In the order granting that motion but addressing a different aspect of the Signage Foundation's motion, the court noted that the Anti-SLAPP "defense" was procedural for choice of laws purposes because it protected persons against suit for speaking out on matters of public concern. The court had resolved the defense at the outset of the suit, as the Act contemplated.

The APA is not entitled to judgment based on an affirmative defense determined unfavorably to the APA at the outset of the suit, then stricken as an affirmative defense. The Anti-SLAPP defense is no more an issue for trial than are the claims that would have been raised in the Signage Foundation's amended

complaint. The court denies the APA's motion for judgment on partial findings with respect to the breach of contract claim.

The Signage Foundation's sanctions motion remains. As already noted, this motion, accompanied by scores of pages, was filed on the morning of the second phase of the trial. Briefing on the motion was completed after the second phase of the trial was adjourned. Having reviewed the entirety of the parties' submissions, the court is fully persuaded that this is little more than a tempest in a teapot.

The APA failed to disclose two letters from Eric Kelly dated July 13 and 14, 1998. The Signage Foundation's former counsel's affidavit to that effect is persuasive. Counsel for the APA represented to the court that he thought the letters had been produced. The court has no reason to doubt his truthfulness in that statement, and based upon his performance of his duties as an officer of this court down through many years, the court is persuaded that he truly believed the letters had been produced. There was no improper intent or bad faith in the failure to produce. The Signage Foundation's motion also focuses heavily on development of the Growing Smart guidebook, an APA publication separate from the *Content-Sensitive Signage Design*. Having heard the Signage Foundation's case-in-chief, the court sees the Growing Smart side issues as having far too little significance to the issues that are part of this case to justify imposition of sanctions.

There was an inadvertent failure to make discovery of a few items of exceedingly modest significance. Ordinarily, while such failures would not support

the exceptional sanctions requested, the court might order the APA to pay attorney fees incurred in the bringing of the motion to compel. *See* Fed. R. Civ. P. 37(c)(1). In this case, however, the court declines to do so. In its supporting memoranda, the Signage Foundation groundlessly charges that the non-production was part of an effort to mislead and distract the court. Other than conclusory aspersions, the Signage Foundation has provided the court with no reason to believe the failures were anything other than inadvertent, or that counsel's belief that he had provided the Klein letters to one or more of the 5 different law firms that have represented the Signage Foundation at various times during this lawsuit was anything other than reasonable.

District Rule 83.5(g) provides in part, "Every attorney . . . in a case in this court shall certify that he or she has read the Standards for Professional Conduct within the Seventh Federal Judicial Circuit . . . and shall abide by them in all cases in this court." Those standards include, "We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety." <u>Standards for Professional Conduct Within the Seventh Federal Judicial Circuit</u>, Lawyers' Duties to Other Counsel ¶ 4. The civility standards are not to be used as a basis for sanctions or penalties, but this court chooses not to make discretionary fee awards to parties whose very requests for sanctions offend those standards.

For the foregoing reasons, the court:

    1. GRANTS IN PART the defendant's motion for judgment on partial findings [docket #163]. The motion is granted with respect to the fraud

claim, and denied with respect to the breach of contract claim.

    2. DENIES in all respects the plaintiff's motion for sanctions for discovery misconduct [docket #169].

    3. DENIES AS MOOT the plaintiff's motion to expedite ruling [docket # 172].

    4. GRANTS the plaintiff's motion for status conference [docket #176], which shall be scheduled in a separate order. The court will entertain any request to allow participation in that conference by telephone. At that conference, the court will schedule the balance of the trial.

SO ORDERED.

ENTERED:   December 11, 2006

                /s/ Robert L. Miller, Jr.
                Chief Judge
                United States District Court